The Judges delivered their opinions.
JUDGE TUCKER,
(after stating the case.) Mr. Wickham for the appellant, admitted that it was the probable, and even apparent intention of the testator to give his two sons an equality of. estate as well as an equal quantity in his lands: but contended that no estate in fee-simple could pass, even by a will, without words of inheritance, or of perpetuity, or such expressions as were descriptive of the testator’s whole estate in the lands. Mr. Wirt, on the other hand, insisted, .that, where no particular estate is limited by the words of the will, the testator’s intention shall prevail. The case was very ably argued on both sides, and I felt myself much obliged to the counsel for .their assistance.
The subject of testamentary dispositions of land received in this Court, in the celebrated case of Kennon v. M’Robert and Wife, as full and elaborate a discussion from the bar (as I have been informed) as ever any cause had in any Court. The clear, lucid, and comprehensive view, of-the subject generally, taken by the justly celebrated President Pendleton, in the opinion which he delivered as the resolution of the Court, points out, in my opinion, the polar star by which Courts in future ought, in all cases, to be guided and directed. He has clearly and demonstratively shewn that there are no precise words, no precise arrangement of them, nor any thing in any degree technical, necessary to the discovery of the testator’s real and legal intention. He has convicted those, who have contended for such precision and technicality, of inconsistencj' and contradiction, and has demonstrated (to my satisfaction at least) that, whenever from the whole face and context of the will, we can collect the testator’s,intention, we are bound to give,it effect, (a)
*In the present case, I am full}' satisfied that the testator meant to dispose of the whole estate. And that under the words worldly goods, he meant to include his lands, and his estate therein. The next sentence, after that in which these words occur, contains the disposition of all his lands to his wife, for life: she might (as was suggested in the argument) have been young, and a remainder for life only of very little value to his sons. The emphatical words that after her death all his lands should be equally divided between his heir and his second son, Dragon Swamp and all, impress me with the idea, that he thought these words sufficient to shew they were to have equal estates, as well as equal quantities in the land. Tne clause respecting the still (as was very pertinently and forcibly observed by the counsel) shews he recollected that favorite object was incapable of partition: he therefore gives it to the eldest son whenever their joint interest in it should cease. Had he intended the lands also to go to the same son, he would have said so.
There is one reason, which does not exist in England, why the intention of the testator in the distribution of his lands among his children ought to be referred to an estate of inheritance, unless the contrary intention manifestly appear. It is, that lands were the property most easily acquired in this country, as well as most necessary to the support of a family. A father, often, had nothing else to give. In distributing it, he must be presumed to do a father’s part among his children by giving an estate of inheritance.
I therefore think the judgment oug'ht to be affirmed.
JUDGE ROANE.
In the case of Kennon v. M’Robert,(b) the Court, after discussing much at large the question whether the word “estate” could be transposed from the introductory part of a will, to the devising part, so as to enlarge the interest devised from a life estate into a fee, left that question, expressly, undecided. It did so, although it expressed a strong affirmative opinion upon the question; because the case could well go off upon another point, and in deference to the cases of Mitchell v. Sidebotham, (c) Den v. Gaskin, (d) and Wright v. Wright, (e) in which contrary decisons had been rendered. To these last cases might have been added (inter alia) those of Shaw v. Russel, (cited in Den v. Gaskin,) Loveacres v. Blight, (f) and Hogan v. Jackson, (g) All of these cases 543 seem to have established *the position beyond a doubt, that such introductory words, alone, are not sufficient; though the last-mentioned case very properly admits, that they may be resorted to as a help to guide the judgment of the Court, in relation to the words contained in the devise itself. The opinion of the Court on this point, as expressed in the case of Kennon v. M’Robert, seems to have been grounded upon the three cases, of Tanner v. Wise, (h) Ibbetson v. Beckwith, (i) and Grayson v. Atkinson, (k) A reference to the two former cases will shew that there were words also in the body of the respective devises, in aid of which the introductory words were used; and thus the decisions on them are perhaps to be reconciled to the distinction taken as above, in the case of Hogan v. Jackson: and, with respect to the' last case, if the words in the body of the will “all the rest of my goods, lands,” &c. do not shew it to be of the same character, the intro *215 ductory words are unusually strong to import an intention to dispose of all the testator’s temporal estates; in which respect the preamble before us (it will presently be remarked) is different. That case of Grayson v. Atkinson is, therefore, perhaps, the only case that can be found (or was relied on by the Court) to justify the construction of a fee, from the words of the preamble of a will, without words of similar import, in the body thereof, to aid which the introductory words are to be used. The weight of the English cases, therefore, undoubtedly is against the position that introductory words, alone, are competent to operate an enlargement into a fee. The opinion in the case of Kennon v. M’Robert has, however, been since admitted, and acted upon bjr this Court; and it has now grown into a rule of property, (not to be departed from,) that the word “estate,” alone, in the preamble of a will, is sufficient. The cases of Davies v. Miller,(a) and Watson v. Powell,(b) have been decided conformably thereto; though, in the former, the word “estate” is also found in the conclusion of the will, and was relied on by the Court as aiding the preamble. In all those cases, however, the word “estate” was found in the introduction : there was no opinion given in relation to -words of an inferior character. That was the ultimatum of those cases; and, if we go beyond it, and are satisfied with terms short of that, we do not stand upon the authority of that decision. The most that can be contended for, in favour of that decision, is, that it has exalted the introductory words of a will to the level of the devising part: that case, how-544 ever, "cannot be construed to have decided, that words contained in the preamble of a will shall carrj' a fee, which words in the devising part thereof would be insufficient to produce that effect. That is going a grade farther than was necessary in that case; for the word “estate,” if found in the devising clause, would have been sufficient. Whenever such a position shall be established, it will not only prostrate one of the best settled rules for the construction of wills, but also lead to the absurdity of supposing that the intention of the testator is to be better collected from the preamble of the will (which, in general, contains nothing more than the formulary expressions of the scrivener) than from the text of the will itself; and that slighter expressions would do in the former than in the latter.
Taking the preamble of the will, therefore, to be of equal dignity with the body of the will itself, and not of greater; while it is admitted that any words, however irregular, importing a devise of an inheritance, will carry a fee, it is also true that, if such words are wholly wanting, nothing but a life estate passes. There is no position of the law better established than this; and this rule is not in the smallest degree impugned by any of the decisions of this Court. This position results from the nature of a will, which is only considered as a species of conveyance ;(c) and as words of inheritance are indispensable in conveyances at the common law, so they are necessary, by analogy, in the case of wills, although in favour of the intention of the testator (and because he is supposed to be inops consilii) any equipollent words, however irregular, are received. Thus it is held that “all my estate,” or “all my interest,” will do; but that “all my lands at A.” will not. (d) The former will suffice, because they import the quantity of interest conveyed; for an “estate” is defined to mean “such interest in lands as the tenant hath therein ;”(e) whereas the term “land” only imports the thing, or the specific property devised. In making this construction, it is also held that we must have resort to the words of the will itself, however irregular; and there must be no doubt, upon those words, taken in a general view, that a fee was intended; or else the rule of law must prevail, (f) It must prevail, (and has been so decided in numberless cases,) although it is at the same time admitted by the Judges, that that rule, in many cases, thwarts the intention of the testator, as ordinary men do not 545 distinguish between "the gift of a tract of land and that of a horse:(g) it must also prevail in cases -where the descent of the land to the heir seems even reprobated by leaving him a disinheriting legacy of a shilling, or the like.(h) The general intention inferrible from the consideration just mentioned is not competent to operate the enlargement: we must look for it in the words of the will; and if the intention of the testator shall chance (in any case) to be thwarted, it is (to use the language of Eord Mansfield) because “quod voluit non dixit.”
In the case before us, the words of the introduction are, “as to what worldly goods it has pleased God to give me, I leave and bequeath as follows.” There are no words here descriptive of the testator’s interest in the lands in question; nor does he say that he means to dispose of all his worldly goods, and much less all his interest therein. He only says that, with respect to his worldly goods, he means to devise so and so: and these words would have been still proper, had the testator only disposed of half his estate, or of his lands only. These are the settlements of Eord Mansfield, in relation to the introductory words in the will, in Den v. Gaskin ; words which are similar to, but stronger, at the same time, than those before us. I will not say, however, but that this criticism upon the introductory words which is entirely proper under the point of view in which such words are held in England, may be less proper under the decisions of this Court, as aforesaid, by which the character of such words seems changed and exalted, and they are placed, as it were, upon a level with the devising words themselves : on this point, however, I give no *216 opinion, because the words in the preamble now in question stop short of the desideratum required and do not import the quantity of interest the testator professed to devise.
The case-before us is, then, a naked one. The introductory part of the will is short of the standard required by the decisions of the Court, and receives no aid from the body of the will itself. Neither can such aid be found in the general consideration before stated. This is admitted by the Court in the said case of Kennon v. M’Robert. In that case the Court disclaimed the power to change the law, whatever its opinion might have been touching the rule in question, considered as a new case; admitted, that it was to be governed by precedents; agreed, that cases prior to January, 1787, (when the common law 546 rule concerning conveyances *was changed by an act of the legislature,) must be settled by the decisions of that time; and admitted, that the intention of the testator (which it also decides is to be collected from the will itself) must not prevail against the settled rules of construction.
As well, therefore, on the ground of the principles declared by the Court in the said case of Kennon v. M’Robert, as of those precedents by which the Court professed in that case to be governed, I have no hesitation in saying that only an estate for life passed in the estate before us, and that the judgment of the District Court is erroneous, and ought to be reversed. A contrary decision in this case (considering that almost all wills have the formulary words of introduction in them) would go the length of repealing the rule aforesaid altogether, in relation to these testamentary conveyances; and that by the mere power of the Court, when the power of the Legislature only was deemed competent to make the change in relation to their prototype, (common law conveyances,) and was exercised prospectively only, (from the 1st of January, 1787,) leaving all prior conveyances to stand by the rules antecedently established; as the Court, (in the case of Kennon v. M’Robert,) has also expressly held, as aforesaid, should be the case in relation to wills prior to the period aforesaid. That case itself, therefore, seems to me a conclusive authority in favour of a reversal in the present instance.
JUDGE ELEMING
stated the case, and proceeded as follows. The only question is, whether William Wyatt (the younger son) took an estate in fee, or for life only, in the lands bequeathed to him? "
Under the feudal system in England an arrangement was made of the various tenures by which lands were to be holden. It was natural to suppose that technical forms would not always be attended to; and hence it became necessary to provide a rule for cases where the duration of the estate was not described. The rule under the feudal system was, that conveyances of an estate in land, without words of inheritance or limitation, passed only an estate for life.
After the statutes of the 32d and 34th of Henry VIII, a more liberal construction, and extensive latitude has been allowed, in the construction of wills respect-547 ing lands, than in conveyances *by deed; on account of the former being often made in extremity, where counsel, skilled in the technical terms of the law, were not to be had: and, therefore, the intention of the testator is to prevail in every case where it does not contravene some known and established rule of law.
Lord Holt, and other Judges in more modern times, emphatically call that intention the polar star by which our decision- is to be guided. And Justice Buller, in delivering his opinion in the case of Hodgson v. Ambrose, Douglas, 341, noticed what Lord Hardwicke truly said, in Bagshaw v. Spencer, 1 Vez. 142; 2 Atk. 577, “there can be no magic or particular force in certain words, more than others; their operation must arise from the sense they carry.” And, he added, “I say, that sense can only be found by considering the whole will together. That is the first and great rule in the exposition of all wills; and it is a rule to which all others must bend. It says, ‘if not inconsistent with the rules of law:’ but it must be remembered that those words are applicable only to the nature and operation of the estate or interest devised, and not to the construction of the words. A man cannot, by will, create a perpetuity, put the freehold in abeyance, nor limit a fee upon a fee, &c. But the question whether the intention be consistent with the rules of law, or not, can never arise till it is settled what the intention was; and, if it be apparent, I know of no case that says a strict legal construction, or a technical sense of any words whatever, shall prevail against it.” Nor, in my apprehension, shall the want of a technical word frustrate the intention of a testator, where it is apparent upon the face of the whole will taken together.
Lord Mansfield, in the case of Mudge v. Blight, Cowper, 355, after noticing that, at common law, a deed, without words of limitation, conveys to the donee only an estate for life, adds, “but I really believe that almost every case determined by this rule, as applied to a devise of lands in a will, has defeated the real intention of the testator. Notwithstanding this, where there are no words of limitation, the Court must determine in the case of a devise affecting real estate, that the devisee has only an estate for life. But, as this rule of law has the effect I have just mentioned, in defeating the intention of the testator, in almost every case that occurs, the Court has laid hold of the generality of other expressions in a will, where any such can be 548 found, to take the devise *out of this rule. Therefore, if a man says ‘I give all my estate, ’ that has been construed to pass a fee: or even if words of locality are added as ‘all my estate at A.’ it has been held that the whole of the testator’s interest in such particular lands will pass, though no words of limitation are added. 2 P. Wms. 524. So in the case of Hogan v. Jackson, from Ireland, the Court had no difficulty in saying that the words ‘all my worldly substance,’ in the introductory part of the will, meant every thing the *217 testator had, and that the words all his real effects, in the subsequent residuary ■devise, were equivalent to worldly substance, and carried every thing to the residuary devisee. In general,” (adds Lord Mansfield,) “wherever there are words and expressions, either general or particular, or clauses in a will, which the Court can lay hold of, to enlarge the state of a devisee, they will do so, to effectuate the intention. But,if the intention of the testator is doubtful, the rule of law must take place. ’ ’
In the case before us, I have no doubt but the intention of the testator was to pass a fee to both his sons. First, because in the introductory part of the will he uses this expression; “andas to what worldly goods it hath pleased God to give me, I leave and bequeath as followeth;” and immediately proceeds to dispose of his lands, in the first clause of his will; manifesting thereby his idea that the words worldly goods, comprehended all his worldly possessions, and were tantamount to the words all his worldly estate; and it seems agreed on all hands, that, had he used the word estate, instead of goods, a fee would have passed to his son William; (see Davies v. Miller, 1 Call, 127, and Watson v. Powell, 3 Call, 306,) and, to my mind, the latter was as expressive of his intention as the former would have been. We frequently find men, who are unacquainted with the technical terms of the law, using the word goods, to signify estate; a recent instance has occurred, during the present term of this Court, in the will of William Murray, in the preamble of which he expressed his intention of disposing of all his worldly goods, and immediately proceeded to bequeath (not devise) his lands. In the case before us, the testator, after giving his wife a life in his lands, adds, “Item, after the decease of my wife, I give and bequeath to my sons Richard and William Wyatt all my land, to be equally divided between them, Dragon Swamp and all,” manifesting thereby, in my apprehension, his intention that his sons should 549 *be equal, not only respecting the quantity, but also the interest they were to enjoy in his lands; which was an absolute fee. He then directs his still, likewise, to be between them, for their own use, and after, to his son Richard; that being an article, which, if divided, would be rendered useless to both sons.
On this view of the case, even from the English authorities, it appears to me that William Wyatt took a fee in the lands bequeathed to him by his father’s will; but, if not, the case of Kennon v. M’Robert, in this Court, and the subsequent cases of Davies v. Miller, and Watson v. Powell, seem to have put it beyond a doubt. I am therefore of opinion, that the judgment of the District Court ought to be affirmed.
By a majority of the Court, the judgment was affirmed.

 7 Brown’s Parl. Cases, 467, Jackson v. Hogan; Cowp. 299, S. G.: 1 Bro. Ch. Rep. 437; 3 Burr. 1881; 3 P. Wms. 295; 2 P. Wms. 194; Forr. 160; Amb. 387; 1 Call, 127; 3 Call, 306; 2 Vern. 690.

 1 Wash. 109.

 Doug. 760.

 Cowp. 670.

 1 Wilson, 414.

 Doug. 354.

 Cowp. 304.

 3 P. Wms. 295.

 Cases temp. Talb. 157.

 1 Wils. 133.

 1 Call, 127.

 3 Call, 306.

 Cowp. 90, 304.

 Doug. 670.

 Bl. Com. 103; Doug. 354.

 Doug. 354; Cowp. 240.

 Doug. 670; Cowp. 304, 657.

 Cowp. 670.